Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 10, 2002        Decided May 9, 2003

No. 01-5403

TONY MORGAN,
APPELLANT

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION AND
MITCHELL DELK,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 98cv01397)

*David A. Branch* argued the cause and filed the briefs for appellant.

*Nancy R. Kuhn* argued the cause for appellees. With her on the brief were *Diane Marshall Ennist* and *Kathy B. Houlihan.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, ROGERS, and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The plaintiff in this case brought suit against the Federal Home Loan Mortgage Corporation and one of its officers, alleging that the corporation failed to hire him for any of several positions because of his race and in retaliation for his having filed a discrimination complaint with the Equal Employment Opportunity Commission. The district court granted the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and we affirm.

I

Plaintiff Tony Morgan, an African–American male, was employed as Director, Executive Corporate Relations at the Federal Home Loan Mortgage Corporation ("Freddie Mac") from January 17, 1995 to March 31, 1996. His employment ended as a result of a reduction in force. In exchange for six months of severance pay and other benefits, Morgan signed a release of all "claims arising out of or relating in any way to [his] employment relationship" prior to April 7, 1996, the effective date of the release. J.A. at 203–04. Before and after executing the release, the plaintiff applied for a number of other positions at Freddie Mac, but was unsuccessful in obtaining reemployment.

On December 11, 1996, Morgan filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging, inter alia, that Freddie Mac's failure to rehire him was due to racial discrimination. After filing the complaint, Morgan submitted several additional, also unsuccessful, applications for employment with the corporation.

On June 3, 1998, Morgan filed suit against Freddie Mac and three of its officers in the United States District Court for the District of Columbia. The plaintiff alleged that Freddie Mac had refused to rehire him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and 42 U.S.C. § 1981. He also alleged, inter

alia, that the refusal was in retaliation for his having pressed employment discrimination claims with the EEOC, in violation of Title VII, 42 U.S.C. § 2000e–3(a).[1]

On November 9, 2000, the district court granted a motion to dismiss Morgan's claims against two of the three individual defendants. After extensive discovery, the remaining defendants, Freddie Mac and its Vice President, Mitchell Delk, moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. By that point, the plaintiff had narrowed his claims to discrimination and retaliation in Freddie Mac's failure to offer him eight positions. The district court granted the defendants' summary judgment motion regarding four of those jobs because Morgan had been rejected for them prior to the effective date of the 1996 release of claims. *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 108 (D.D.C. 2001). As to the claims relating to the four remaining positions, the court granted summary judgment on the ground that Morgan had failed to establish a prima facie case of discrimination or retaliation. *Id.* Only the latter four positions are at issue on this appeal.

## II

We review the district court's grant of summary judgment de novo. *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Such a grant is appropriate if " 'there is no genuine issue as to any material fact and . . . the moving

---

[1] Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to fail or refuse to hire . . . any individual . . . because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a). Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. Title VII also makes it "an unlawful employment practice for an employer to discriminate against any . . . applicant[ ] for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" concerning employment discrimination. 42 U.S.C. § 2000e–3(a).

party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.* at 248, and a moving party is "entitled to a judgment as a matter of law" if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because Morgan has no direct evidence that Freddie Mac refused to hire him for any of the positions on account of his race, we analyze those claims under the familiar framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See also Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C. Cir. 1984) (applying the *McDonnell Douglas* framework to § 1981 claims). Under that framework, "the plaintiff must [first] establish a prima facie case of discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff can satisfy that initial burden by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802. As the Supreme Court has explained, this framework "demand[s] that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977).

If the plaintiff establishes his prima facie case, the defendant then bears the burden of "'produc[ing] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Reeves*, 530 U.S. at 142 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 254 (1981)). If the defendant produces such evidence, "the *McDonnell Douglas* framework — with its presumptions and burdens — disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Id.* at 142–43 (internal quotation marks and citations omitted). At that point, to "survive summary judgment the plaintiff must show that a reasonable jury could conclude that [he] was [rejected] for a discriminatory reason." *Waterhouse*, 298 F.3d at 992 (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998)). Although the *McDonnell Douglas* framework shifts "intermediate evidentiary burdens" between the parties, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253).

This framework also governs our analysis of Morgan's claims of unlawful retaliation in violation of 42 U.S.C. § 2000e–3(a). *See Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *Williams v. Boorstin*, 663 F.2d 109, 116 (D.C. Cir. 1980). The only difference is the phrasing of the prima facie case: "In order to establish a prima facie case of retaliation, a plaintiff must show: 1) that [he] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." *Mitchell*, 759 F.2d at 86 (internal quotation marks omitted). Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show: 4) that he applied for an available job; and 5) that he was qualified for that position. *Id.* at 86 n.5; *Williams*, 663 F.2d at 116 & n.43.

## III

On appeal, Morgan has confined his claims to Freddie Mac's allegedly unlawful failure to offer him four positions for which Morgan applied after the period covered by his 1996 release. We consider the first three of those positions in this Part, and conclude that Morgan failed to make out a prima

facie case of discrimination or retaliation as to any of them. We consider the fourth position in Part IV below.

In letters dated July 3, 1997, Morgan applied for three jobs previously posted by Freddie Mac: 1) Director, Business Support; 2) Director, Business Strategies; and 3) Director, Issues Management. With respect to his application for the first of these — Director, Business Support — Freddie Mac responded with a letter advising Morgan that the position was currently on hold and that the corporation had stopped all recruitment. Clarke Letter (July 18, 1997) (J.A. at 289). In support of its motion for summary judgment, Freddie Mac proffered evidence that it had suspended recruitment for the position a month before Morgan applied, and that it was never filled. Gertz E-mail Messages (June 6, 1997) (J.A. at 553–56); Clarke Decl. at ¶ 5 (J.A. at 550).

Morgan offered no evidence to rebut the corporation's assertion that it had suspended recruitment for the Business Support directorship before he applied. He did dispute the contention that Freddie Mac never filled the position, noting that in the fall of 1997, a woman named Ann Herrington was interviewed for and in 1998 accepted a job, entitled "Director, Strategic Planning," in the same department. But the plaintiff offered no evidence to contradict the corporation's proof that this was a completely different position, other than to point to the fact that the job description for Director, Business Support included the term "strategic planning" in the list of critical skills and experience needed for the position — albeit *not* in the list of the position's responsibilities. J.A. at 284–85. Having thus failed to raise a genuine issue that the Business Support position for which he applied was one "for which the employer was seeking applicants," *McDonnell Douglas*, 411 U.S. at 802, Morgan failed to establish a prima facie case of either discrimination or retaliation, and summary judgment on this claim was therefore appropriate. *See International Bhd. of Teamsters*, 431 U.S. at 358 n.44; *Williams*, 663 F.2d at 116 n.43.

The second position for which Morgan applied on July 3, 1997, was entitled "Director, Business Strategies." In its

letter responding to Morgan's application, Freddie Mac advised that the job was open only to internal candidates. Morrow Letter (July 18, 1997) (J.A. at 290). Morgan does not argue, and there is no evidence to suggest, that this qualification was other than bona fide or that the corporation imposed it as a means of excluding Morgan or other minority applicants from consideration. Indeed, the requirement that candidates come from within the company was contained in the corporation's original notice of availability, which was posted two months before Morgan applied. J.A. at 395.

Morgan does contend that, despite the stated qualification, Freddie Mac did not limit its consideration to internal candidates. There is no evidence, however, to support this claim. Morgan points to a "resume distribution" cover sheet, which shows that on May 1, 1997, the corporation's human resources department forwarded an external candidate's résumé to Vice President Delk, the hiring manager for the Business Strategies position (as well as for other jobs not at issue here). *See* J.A. at 315. But that résumé was received and forwarded *before* the Business Strategies position was posted, *compare id.* at 315, *with id.* at 395; the external applicant did not apply for any specific position, *see id.* at 315, 317; and the résumé was not forwarded to Delk with reference to any particular job opening, *see id.* at 315. Moreover, Delk responded that he was not interested, *see id.*, and the only other person Morgan contends Freddie Mac considered for the position, a lawyer in its legal division, plainly was an internal candidate. *See id.* at 352, 428–29.[2] Because Morgan thus provided no evidence that he met a bona fide qualification for the Business Strategies position, he failed to establish a prima facie case of discrimination or retaliation, and summary judgment was again appropriate. *See International Bhd. of Teamsters*, 431 U.S. at 358 n.44; *Mitchell*, 759 F.2d at 86 n.5; *Williams*, 663 F.2d at 116 & n.41.

The final position for which Morgan applied on July 3, 1997, was that of Director, Issues Management. In response,

---

[2] The position of Director, Business Strategies was never filled and was ultimately cancelled. Delk Dep. at 33 (J.A. at 351).

Freddie Mac told Morgan that the hiring decision had already been made. *See* Morrow Letter (J.A. at 290). In support of its motion for summary judgment, the corporation offered the testimony of the hiring manager for that job, Ann Schnare, who averred that she had filled the post by making two hires (one part-time, one full-time) in June, before Morgan applied. J.A. at 195. (The vacancy announcement had been published two months earlier, in April 1997. *Id.* at 397.) Morgan's principal response is to cite a letter from Schnare to one of those individuals, Susan Gates, that was dated July 14, 1997. *Id.* at 325. Contrary to Morgan's contention, however, the letter does not offer Gates the position, but rather confirms the corporation's earlier "offer and your [Gates'] acceptance." *Id.* The letter is thus consistent with Schnare's testimony that the offer and acceptance took place in June, and Morgan offers nothing to call that testimony into question.[3] Accordingly, the plaintiff has for a third time failed to establish a critical element of a prima facie case of discrimination or retaliation: the existence of a vacancy in the position for which he applied. *See International Bhd. of Teamsters*, 431 U.S. at 358 n.44; *Williams*, 663 F.2d at 116 n.43.

IV

In November 1997, the position of Director, Issues Management once again became open.[4] In December, without advertising the job, Freddie Mac offered it to Ann Herrington, a white female who was working at the General Electric

---

[3] Morgan also contends that Freddie Mac continued to seek applicants for the Issues Management position after Morgan submitted his application, citing an application that Ann Herrington submitted on July 14, 1997. J.A. at 320. But that document establishes nothing more than that Morgan was not the only person who applied for the opening after it was filled.

[4] Freddie Mac explained that the job became available because Gates, the part-time incumbent, had become responsible for writing speeches for Freddie Mac's corporate communications group and was no longer able to fulfill her Issues Management responsibilities. Schnare Decl. ¶¶ 5–7 (J.A. at 569–70).

Company at the time. Herrington turned the offer down (accepting a different position instead), and Freddie Mac ultimately eliminated the office altogether as part of a reorganization the following March.[5] Morgan points out that both he and Herrington originally applied for the Issues Management job at the same time, in July 1997,[6] and contends that Freddie Mac's failure to offer him the position that December constituted unlawful discrimination and retaliation.[7]

Because there was a vacancy at the time Freddie Mac made the offer to Herrington, and because Herrington was herself an external candidate, Morgan's prima facie case regarding this claim does not suffer from the defects that we have identified with respect to the July 1997 positions. Although Freddie Mac contends that there are other problems with Morgan's prima facie case concerning the November 1997 opening, we need not resolve that dispute because the corporation also proffered a nondiscriminatory reason for not considering Morgan at that time: namely, that it was unaware that he was still interested. As the Supreme Court has made clear, once a defendant has proffered such a nondiscriminatory explanation, it has "done everything that would be required of [it] if the plaintiff had properly made out a prima facie case." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). At that point, "whether the plaintiff really did so is no longer relevant," and the only question is "whether 'the defendant intentionally discriminated against the plaintiff.'" *Id.* at 715 (quoting *Burdine*, 450 U.S. at 253); *see Waterhouse*, 298 F.3d at 993 n.6. On that question, Morgan bears the "'burden of showing that a reasonable jury could conclude'" that Freddie Mac failed to offer him the position out of discriminatory or

---

[5] The plaintiff does not assert that the cancellation of the position was due to discriminatory or retaliatory animus.

[6] *See supra* note 3.

[7] Morgan describes the Issues Management directorship as a single position, for which he was twice rejected. Freddie Mac contends that there were two separate positions. In our view, nothing turns on this distinction.

retaliatory animus. *Waterhouse*, 298 F.3d at 993 (quoting *Aka*, 156 F.3d at 1290).

Morgan has failed to satisfy that burden. Freddie Mac explained that, although both Morgan and Herrington initially applied for the Issues Management directorship in July 1997, the corporation was not aware that Morgan remained interested after he was informed in mid–July that the position had been filled. Herrington, by contrast, repeatedly expressed her interest later that fall. Thus, when the position again became available in November, the corporation knew that Herrington was interested but did not know that Morgan was. Schnare Dep. at 60–62 (J.A. at 196, 533–34). A plaintiff may, of course, "attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256). But in the district court the plaintiff offered no evidence to rebut Freddie Mac's contention that it was unaware of his interest in late 1997, and his appellate briefs do not even allege that this contention was false.[8]

In addition to showing that an employer's proffered explanation is unworthy of belief, a plaintiff may submit other evidence of the employer's unlawful animus in a bid to avoid summary judgment. *See Reeves*, 530 U.S. at 148–49; *Burdine*, 450 U.S. at 256; *Aka*, 156 F.3d at 1289.[9] Although

---

[8] At oral argument, Morgan did contend that he had in fact made his interest known in the fall of 1997. But he offered no evidentiary support for that assertion, and appellate argument is in any event too late in the proceedings to controvert the issue. *See Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1036 (D.C. Cir. 1988) (holding that in reviewing summary judgment, the court of appeals' "sole and limited task is to assess with care the record before the District Court at the time it granted [the motion]," and may not consider evidence proffered for the first time on appeal (internal quotation marks omitted)).

[9] A plaintiff may also rely on the evidence used to establish his prima facie case. *See Reeves*, 530 U.S. at 143; *Waterhouse*, 298 F.3d at 992–93; *Aka*, 156 F.3d at 1289. Here, however, Morgan

Morgan does not frame the argument in this way, we have considered the only two pieces of evidence that might be relevant in this regard. First, Morgan's brief alludes to a racially degrading e-mail sent out by a single Freddie Mac employee. But Morgan does not allege that the offending employee had any role whatsoever in deciding whether to hire him. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077, 1079–80 (D.C. Cir. 1999) (holding that evidence of a discriminatory statement by an individual uninvolved in the challenged employment decision is insufficient to defeat summary judgment). Second, Morgan notes that, in response to his EEOC complaint, the Commission issued a determination of reasonable cause to believe that Freddie Mac had discriminated against him. J.A. at 280–82; *see* 42 U.S.C. 2000e–5(b) (requiring the Commission to determine whether "there is reasonable cause to believe that [an unlawful employment practice] charge is true"). But the EEOC determination does not indicate whether it covers Morgan's claim regarding the November 1997 Issues Management position, and it is doubtful that it does since Morgan last filed EEOC charges in April 1997, *see* Appellant's Br. at 25, well before he applied for any of the openings at issue on this appeal. Moreover, the determination's conclusory sentences are insufficient, standing alone against Freddie Mac's unrebutted nondiscriminatory explanation, to satisfy Morgan's "burden of showing that a reasonable jury could conclude" that he was not offered the Issues Management position on account of his race or discrimination complaint, *Aka*, 156 F.3d at 1290. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283–84 (9th Cir. 2000); *Goldberg v. B. Greene & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).[10]

---

presented (at best) a bare bones prima facie case that alone could not constitute "sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision" or "to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 140, 148.

[10] Moreover, the Statement of Genuine Issues filed by Morgan in the district court cited the EEOC letter only in support of his separate claim that Freddie Mac had created a hostile work envi-

V

Morgan's claims that Freddie Mac unlawfully rejected him for three positions in July 1997 fail because he cannot "demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd. of Teamsters*, 431 U.S. at 358 n.44. His contention that Freddie Mac unlawfully failed to offer him a position in late 1997 founders upon his failure to provide any evidence that the corporation's lawful explanation for not offering him the post was false, or any other evidence from which a reasonable jury could conclude that he was not hired because of racial discrimination or retaliation. Accordingly, the district court properly granted defendants' motion for summary judgment, and the decision of that court is therefore

*Affirmed.*

————————

ronment, a claim that plaintiff has not raised on this appeal. J.A. at 380–81.