Catherine **NAILS**, Plaintiff,

v.

Gordon **ENGLAND**, Secretary of the Navy, Defendant.

No. CIV.A.02–0573(RWR).

United States District Court, District of Columbia.

March 31, 2004.

Lisa Lyons Ward, Ellicott City, MD, for Plaintiff.

G. Michael Harvey, Dorann E. Banks, U.S. Attorneys Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff Catherine Nails filed this lawsuit alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et. seq.* In her complaint, she alleges that she was discriminated against on the basis of race and retaliated against for filing an equal employment opportunity complaint ("EEO complaint") when she was denied a promotion and sufficient performance awards. Defendant has moved to dismiss plaintiff's complaint as untimely and for failure to exhaust administrative remedies. In the alternative, defendant has also moved for summary judgment for failure to establish a *prima facie* case of race discrimination or retaliation and failure to establish that defendant's legitimate non-discriminatory reasons are a pretext for discrimination. Because plaintiff has not opposed defendant's motion to dismiss for failure to exhaust administrative remedies with respect to her retaliation claims in Counts I and II, defendant's motion to dismiss as to those claims will be granted. Because plaintiff has failed to establish that there are any genuine issues of material fact as to the remaining claims and defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment will be granted as to those claims.

### BACKGROUND

Plaintiff is employed at the Naval Sea Systems Command ("NAVSEA"), part of the United States Navy. She has been employed by the Navy since 1981. (Am. Compl.¶ 8.) Plaintiff competed and was selected for a career-ladder GS–201–12/13 Personnel Management Specialist position in June 1999. Effective August 22, 1999, plaintiff was promoted to the position at the GS–201–12 grade.

In December 1999, the Office of the Deputy Assistant Secretary of the Navy ("ODASN") sent a memorandum to the Human Resources Director of NAVSEA, notifying NAVSEA that certain employee positions could not be maintained at the GS–201–13 grade level and were required to be downgraded within four pay periods. (Def.'s Mem. in Supp. of Mot. to Dismiss or for Summ. J. ("Def.'s Mem."), Ex. 11 ("Classification Accuracy Review Memorandum").) ODASN's memorandum specifically stated that the decision was not based on "the incumbents' abilities or quality of work, but rather was based on a comparison of the positions' duties and responsibilities with applicable classification standards." (*Id.* at 2.) NAVSEA notified ODASN in April 2000 that it did not intend to make the revisions retroactive and that NAVSEA would maintain those employees already promoted to the GS–201–13 grade level rather than downgrade the pay scale for those employees. (Def.'s Mem., Ex. 12 ("Bowers Decl.") at ¶ 6.) NAVSEA and ODASN agreed in June 2000 to rewrite the position descriptions prospectively, providing that GS–201–12 would be the maximum pay level for employees primarily performing operations functions in the GS–201 series, and including an addendum to the position description providing that GS–201–13 would be the full performance level for employees primarily performing program management or Director of Civilian Personnel Program functions. (*Id.* at ¶ 8.) The position description went into effect on August 14, 2000. (*Id.;* Def.'s Mem., Ex. 13 ("Position Description Form dated Aug. 14, 2000").)

Six days after the new position descriptions went into effect, plaintiff became eligible for promotion to the GS–201–13 pay level without competition. She was contacted August 29, 2000, by her first-level supervisor, Richard Bowers, who informed her of the classification changes and stated that she was performing operations duties

and not management duties, but that he would work with her to give her exposure to GS–201–13 duties. (Bowers Decl. at ¶¶ 10–11; Def.'s Mem., Ex. 15 ("Pl.'s Compl. of Discrimination.")) Plaintiff declined his offer. (Bowers Decl. at ¶ 11.) At the time plaintiff became eligible for promotion, plaintiff was the only NAVSEA personnel management specialist at the GS–201–12 grade level. The other specialists were already at the GS–201–13 level at the time the revised position description went into effect.

By July 2002, NAVSEA's Staffing and Classification Section, where plaintiff worked, was entirely staffed with specialists at the GS–201–12 level or lower. (Def.'s Mem., Ex. 65.) Plaintiff's team leader, a black male, was the only member of the section at the GS–201–13 level. (Def.'s Mem., Ex. 64 at 266.) Bowers and Theresa Brown, plaintiff's first-level supervisor at the time, signed new position descriptions for all of the specialists on July 12, 2002, reflecting that the full performance level for each of the positions was GS–201–12. (Def.'s Mem., Ex. 66.) Personnel action form SF–50s reflecting the change were distributed to all of the specialists. (Def.'s Mem., Ex. 67.)

Defendant did not give plaintiff a performance award for the performance period ending on June 30, 2000. (Am. Compl.¶ 13.) Bowers testified that he did not recommend that any of the staffing and classification specialists receive a performance award from SEA 09B51, the Human Resources Operations Section. (Def's Mem., Ex. 34 ("Bower's Dep.") at 196.) Plaintiff received a performance award of $350 for the performance period ending June 30, 2001. (Def.'s Mem., Ex. 37 ("Notification of Personnel Action").) Lamar Paschall, a white Computer Specialist and Paul Polinger, a white Employee Relations Specialist, received awards of $350 and $500, respectively. (Def.'s Mem., Exs. 39 & 40.) Paschall had been laterally transferred in March of 2001 to NAVSEA as a GS–201–13 Computer Specialist and was performing program management level functions. (Def.'s Mem., Exs. 43 & 46.) Polinger had been laterally transferred to NAVSEA as a GS–201–13 Employee Relations Specialist in May of 2001 and was performing program management level functions. (Def.'s Mem., Exs. 43 & 47.) Nails had not applied for either position. (Def.'s Mem., Ex. 44 ("Pl.'s Dep.") at 204–05.)

## PROCEDURAL BACKGROUND

Plaintiff filed a formal administrative complaint of discrimination on September 29, 2000, alleging that she had been discriminated against on the basis of race when she was not promoted and when she did not receive a performance award for the performance period ending on June 30, 2000. On November 6, 2000, Lisa Lyons Ward entered her appearance as plaintiff's counsel by letter. Plaintiff timely requested a hearing before an Equal Employment Opportunity Commission ("EEOC") administrative law judge ("ALJ").

On September 4, 2001, plaintiff moved to amend the administrative complaint to add allegations of retaliation and discrimination, arguing the new claims were like or related to the underlying administrative complaint. Prior to any decision on the motion to amend the complaint, plaintiff notified the ALJ through counsel that she had filed a civil action in federal district court on September 25, 2001 in accordance with 29 C.F.R. § 1614.407(b), an implementing regulation of Title VII which provides that a federal employee may file a civil action after it has been pending at the administrative level for 180 days and final action has not been taken. (Def.'s Mem., Ex. 74 ("Sept. 25, 2001 Letter").) By letter dated September 28, 2001, the ALJ

dismissed the complaint pursuant to 29 C.F.R. § 1614.107(a)(3), which provides that an agency may dismiss a complaint that "is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint . . . ." The ALJ returned the complaint to the Department of the Navy EEO Agency. (Def.'s Mem., Ex. 74 ("Sept. 28, 2001 Letter").) On October 23, 2001, the Agency issued a Final Agency Decision ("FAD") dismissing the administrative complaint pursuant to 29 C.F.R. § 1614.107 because of plaintiff's representation that she had a complaint pending in federal court. (Def.'s Mem., Ex. 75 ("Oct. 23, 2001 Letter").)

According to the plaintiff, neither she nor plaintiff's counsel received the FAD, and neither was informed of it until March 2003 at plaintiff's deposition. (Pl.'s Opp'n to Def.'s Mot. to Dismiss or for Summ. J. ("Pl.'s Opp'n"), at 14.) Plaintiff also states that she attempted to file a complaint in this court on September 25, 2001, but that the complaint was returned in March 2002 to plaintiff's counsel in a U.S. Postal Service Plastic Bag noting that the envelope containing the complaint had been returned damaged. Plaintiff cites as exhibits to her opposition an affidavit of her counsel and a U.S. Postal Service Plastic Return Mail Bag as support for her assertions. (*Id.* at 15.) However, plaintiff has not filed any exhibits in support of her opposition to defendant's motion, despite the requirements of Federal Rule of Civil Procedure 56(e),[1] Local Civil Rule 56.1,[2] and a court order dated December 24, 2003, in which plaintiff was directed to electronically file and submit a courtesy copy to chambers of plaintiff's opposition and all exhibits offered in support. Thus, there is no record evidence of any attempt to file a complaint on September 25, 2001.

On March 25, 2002, a *pro se* complaint was filed in this court. Plaintiff states that the complaint was filed *pro se* because counsel for plaintiff had not yet been admitted to this court. Plaintiff, however, testified in her deposition that she never saw the complaint, that the signature on the complaint was not her signature, and that she did not authorize anyone other than her attorney to sign on her behalf. (Def.'s Mem., Ex. 72 ("Pl.'s Dep.") at 101–02, 106.) Thereafter, on November 18, 2002, the amended complaint was filed in this Court, bearing plaintiff's counsel's signature.

## DISCUSSION

"Summary judgment is appropriate when evidence on file shows 'that there is no genuine issue as to any material fact

---

**1.** Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported [by affidavits, depositions or answers to interrogatories], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**2.** Local Civil Rule 56.1 provides:

An opposition to . . . a motion [for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

and that the moving party is entitled to a judgment as a matter of law.'" *America's Cmty Bankers v. Fed. Deposit Ins. Corp.,* 200 F.3d 822, 831 (D.C.Cir.2000) (quoting Fed.R.Civ.P. 56(c)). "Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury. Material facts are those that might affect the outcome of the suit under governing law, and a genuine dispute about material facts exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotations omitted).

"In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *District Intown Prop. L.P. v. Dist. of Columbia,* 198 F.3d 874, 878 (D.C.Cir.1999), *cert. denied,* 531 U.S. 812, 121 S.Ct. 34, 148 L.Ed.2d 14 (2000). "Summary judgment may be granted even if the movant has proffered no evidence, so long as the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." *Palestine Info. Office v. Shultz,* 853 F.2d 932, 944 (D.C.Cir.1988).

■ Claims of discrimination brought against employers, whether federal or private, are generally analyzed under the burden-shifting test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Stella v. Mineta,* 284 F.3d 135, 144 (D.C.Cir.2002). Under the *McDonnell Douglas* framework, the plaintiff has the burden to establish a prima facie case of discrimination. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). A plaintiff alleging a discriminatory failure to promote "can satisfy that initial burden by showing '(i) that [she] belongs to a racial minority; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'" *Morgan v. Fed. Home Loan Mortg. Corp.,* 328 F.3d 647, ·650 (D.C.Cir.2003) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Where the plaintiff alleges that she was denied an increase in pay or grade, a plaintiff can establish the necessary inference of discrimination by showing that "a similarly situated person outside of [the plaintiff's] protected class requested and received the benefit she sought." *Cones v. Shalala,* 199 F.3d 512, 517 (D.C.Cir.2000) (quoting *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981)).

■ To establish a *prima facie* case of retaliation, the plaintiff must show that she engaged in activity protected by Title VII, that the defendant took an adverse employment action against her, and that the adverse action was causally related to the exercise of her rights. *Jones v. Washington Metropolitan Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir.2000); *Brown v. Brody,* 199 F.3d 446, 453 (D.C.Cir.1999).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision. *Morgan,* 328 F.3d at 650 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). To avoid summary judgment, the plaintiff must then

present evidence which raises a genuine issue of material fact regarding whether the employer's stated reason is pretextual and that the true reason was discriminatory. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

## I. COUNT I: RETALIATION, FAILURE TO PROMOTE

Plaintiff alleges in Count I that defendant discriminated against her on the basis of race when defendant denied her a career-ladder promotion, and that defendant retaliated against her for filing a prior EEO complaint.

### A. *Retaliation*

Defendant has moved to dismiss plaintiff's claim of retaliation in Count I of the amended complaint because she did not include a claim of retaliation for prior EEO activity in her EEO complaint at issue here. Plaintiff has not opposed defendant's motion to dismiss with respect to her claim of retaliation for defendant's acts that occurred prior to filing the administrative complaint on September 29, 2000. Instead, plaintiff addresses in her opposition only acts of discrimination and retaliation that occurred after the September 29, 2000 EEO complaint was filed. (Pl.'s Opp'n at 16.) Local Civil Rule 7(b) requires an opposing party to file a memorandum of points and authorities in opposition to a motion within 11 days of the date of service of the motion. LCvR 7(b). If the opposing party fails to do so, the court may treat the motion as conceded. *Giraldo v. Dep't of Justice*, No. 02–5058, 2002 WL 1461787, at *1 (D.C.Cir. July 8, 2002) (citing *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 68 (D.C.Cir.1997)). "[T]he discretion to enforce this rule lies wholly with the district court." *Bender*, 127 F.3d at 67–68 (stating that "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule"). Accordingly, defendant's motion to dismiss plaintiff's retaliation claim in Count I of the amended complaint will be granted as unopposed.

### B. *Failure to Promote*

Defendant has moved for summary judgment on plaintiff's claim of discrimination in Count I, arguing that plaintiff cannot establish a *prima facie* case of discrimination because she is unable to establish that she was qualified for the position.

 An essential requirement for a *prima facie* case of discrimination based on failure to promote is plaintiff's qualification for the promotion position. *Morgan*, 328 F.3d at 650. A career-ladder promotion is contingent on the employee's ability to perform at the next higher grade. (Def.'s Mem., Ex. 84.)

 In rewriting the position descriptions, NAVSEA made GS–201–13 the full performance level for only those primarily performing program management or Director of Civilian Personnel Program functions. Bowers offered to work with plaintiff to assign her duties that would support the GS–201–13 level in order to document that she was performing at the higher level, but the plaintiff declined. (*Id.* at ¶ 11.) Plaintiff testified at her deposition that on September 25, 2000, plaintiff's third-level supervisor, Bonnie Flynn, also gave plaintiff a project in order to expose her to GS–201–13 level responsibilities. (Def.'s Mem., Ex. 29 ("Pl.'s Dep.") at 52–53.) After providing plaintiff with the opportunity, Flynn later determined that plaintiff was unable to perform the GS–201–13 responsibilities. (Def.'s Mem., Ex. 27 ("Flynn Decl.").) Furthermore, the uncontroverted evidence establishes that Bowers, Flynn and plaintiff's second-level supervisor, McCafferty, were not satisfied

with plaintiff's performance on high-priority recruitment reports. (Def.'s Mem., Ex. 22 ("Flynn Decl.") at 1 & Ex. 25.) Even plaintiff provided testimony that Flynn had expressed her dissatisfaction with plaintiff's performance on those reports in the spring of 2000. (Def.'s Mem., Ex. 24 ("Pl.'s Dep.") at 29–30.)

Plaintiff has not provided any evidence that she was performing program management or Director of Civilian Personnel Program functions at the time of her eligibility for promotion, or that she had been completing her part of the recruitment reports satisfactorily. Plaintiff appears to argue that NAVSEA's selection of two white females to GS–201–13 level Personnel Management Specialists in the spring of 2000 precludes defendant from relying on the position description change to support its argument that plaintiff was not qualified for the promotion. It is plain, and plaintiff does not contest, however, that those selections occurred before the position description change went into effect on August 14, 2000. Plaintiff was not eligible for promotion when the two females were selected and defendant's decision therefore provides no inference of discrimination for defendant's later decision not to promote plaintiff. Additionally, those promotions provide no evidence that plaintiff was qualified for the position she sought at the time that she sought it.[3]

Because plaintiff has not established a *prima facie* case for her claim of discrimination based on failure to promote, summary judgment will be granted to defendant on that claim.[4]

## II. COUNT III: FAILURE TO PROMOTE

Plaintiff alleges in Count III of the amended complaint that defendant discriminated against her on the basis of race and retaliated against her for filing an EEO complaint when Paschall and Polinger were hired into GS–201–13 positions. Defendant contends that plaintiff's claims fail because she did not exhaust her administrative remedies and she cannot establish a *prima facie* case of discrimination.

■ Assuming that this claim of discrimination and retaliation are "like or reasonably related" to the EEO complaint, and thus, that plaintiff has exhausted her administrative remedies with respect to this claim, *Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995), plaintiff has provided no evidence that she applied for the positions into which Polinger and Paschall were transferred. Accordingly, plaintiff has not established that she was subject to an adverse employment action, as is required for a *prima facie* case of discrimination or retaliation. *Brown*, 199 F.3d at 455. Nor has plaintiff even attempted to establish that she was similarly situated to Polinger and Paschall. *Cones*, 199 F.3d at 517. To the extent that plaintiff alleges that the adverse action was defendant's failure to promote her, the *prima facie* case fails because plaintiff has not provided evidence that she was qualified for the positions, which entailed performing program management level functions. *Morgan*, 328 F.3d at 650. Defendant's motion for summary judgment with respect to

---

**3.** It might be different if plaintiff were alleging that the revisions to the position descriptions were discriminatory attempts by the defendant to thwart her promotion. But plaintiff has not alleged, or provided evidence of, such actions.

**4.** Even if plaintiff could establish a *prima facie* case of discriminatory failure to promote, she offers no evidence and the record does not demonstrate that defendant's proffered legitimate non-discriminatory basis for denying her the promotion in August of 2000 was mere pretext for discrimination. *See Morgan*, 328 F.3d at 650.

Count III will be granted because plaintiff has failed to establish a *prima facie* case of discrimination or retaliation.

### III. COUNTS II & V: PERFORMANCE AWARDS

Count II of the amended complaint alleges that plaintiff was discriminated against on the basis of race and retaliated against for prior EEO activity when she was not given a monetary performance award for the performance period ending June 30, 2000. Defendant has moved to dismiss plaintiff's claim of retaliation in Count II of the amended complaint because she did not include that claim in her administrative complaint. As was true with defendant's challenge to plaintiff's claim of retaliation in Count I, plaintiff has not opposed this portion of defendant's motion to dismiss. Accordingly, defendant's motion to dismiss plaintiff's claim of retaliation in Count II will be granted as unopposed.

Defendant has moved for summary judgment with respect to the discrimination allegation in Count II, arguing that plaintiff can not establish a *prima facie* case of discrimination because she has not shown that similarly situated individuals received awards. In support of her claim, plaintiff states in her opposition that Richard Ramsey, Marsha Arrington and Michael Perez received performance awards for the performance period ending June 30, 2000. (Pl.'s Opp'n at 18.) Plaintiff also argues that defendant has issued five award histories for the time period at issue and that they contradict each other. (*Id.* at 19.) For each of these assertions, plaintiff cites to exhibits which she has not attached to her opposition.

Defendant has provided evidence that not one of the staffing and classification specialists similarly situated to plaintiff received an award from plaintiff's section for that period of time. (Def.'s Mem., Ex. 27 (Flynn Decl.)). Plaintiff has provided no evidence in opposition.

Plaintiff has not set forth a *prima facie* case of discrimination because she has not established that she was entitled to a performance award, and thus that she suffered an adverse action. Nor has she provided any evidence that similarly situated individuals were given awards. *Cones*, 199 F.3d at 517. Accordingly, defendant is entitled to summary judgment on Count II.

■ Count V[5] of the amended complaint alleges that plaintiff was discriminated against on the basis of race and in retaliation for prior EEO activity when she was given a $350 performance award for the performance period ending June 30, 2001, because two white males, Paschall and Polinger, each received higher awards. Defendants have moved for summary judgment on Count V arguing that plaintiff cannot establish discrimination or retaliation because she cannot establish that she suffered an adverse employment action.

Defendant has provided uncontroverted evidence that, contrary to plaintiff's contention, she and Paschall received the same award amount—$350. (Def.'s Mem., Ex. 37 & 39.) Defendant has also offered evidence that Polinger received an award of $500, $150 more than plaintiff's. However, plaintiff has provided no evidence that she was entitled to a higher award or that she and Polinger were similarly situated so that they should have received the same award amount. *Cones*, 199 F.3d at 517 (D.C.Cir.2000). In fact, plaintiff concedes in her deposition testimony that Polinger performed different work. (Def.'s Mem., Ex. 42 ("Pl.'s Dep.") at 22–24.) Be-

---

**5.** The count following Count V in the amended complaint was also numbered as Count "V." It will be referred to in this opinion as Count VI.

cause plaintiff has not provided evidence that she was entitled to a higher award or that a similarly situated individual was treated more favorably, plaintiff cannot establish a *prima facie* case of discrimination or retaliation.

Because plaintiff cannot establish that she was discriminated against or retaliated against when she received a performance award of $350, defendant's motion for summary judgment on Count V will be granted.

## IV. COUNT IV: PERFORMANCE EVALUATION

■ Count IV of the amended complaint alleges that plaintiff was discriminated against on the basis of race and in retaliation for prior EEO activity when she was given a "substandard" performance evaluation. Defendant argues that plaintiff's claim should be dismissed for failure to state a claim on the basis that plaintiff cannot establish that she suffered an adverse action.

A "thick body of precedent ... refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions." *Brown,* 199 F.3d at 458 (collecting cases). It is undisputed that plaintiff's supervisors rated her "Pass" or "Acceptable," the highest rating possible. Plaintiff has not presented evidence that this performance evaluation affected her grade, salary or working conditions, or that it had an objectively tangible effect on her employment. *See, e.g., Jones v. Billington,* 12 F.Supp.2d 1, 14 (D.D.C.1997), *aff'd,* 1998 WL 389101 (D.C.Cir.1998). Indeed, plaintiff conceded during her deposition that she did not believe that she was discriminated against or retaliated against in connection with this performance appraisal. (Def.'s Mem., Ex. 56 ("Pl.'s Dep.")

at 281–83.) Accordingly, defendant is entitled to summary judgment on Count IV.

## V. COUNT VI: POSITION DESCRIPTION CHANGE

■ In Count VI of the Amended Complaint, plaintiff alleges that she was discriminated against on the basis of race and in retaliation for EEO activity "when Plaintiff learned, through a routine review of Plaintiff's Official Personnel File, that Plaintiff had been reassigned (unbeknownst to Plaintiff) to a new position description ...." (Am. Compl. at ¶ 24). Defendant has moved for summary judgment on this claim on the basis that plaintiff was treated the same as similarly situated individuals were and cannot rebut defendant's legitimate non-discriminatory reason—the August 2000 ODASN agreement—for the change in her position description.

Defendant provides record evidence that in July 2002 plaintiff's full performance level and position description was "officially changed to reflect that operations duties were considered GS–201–12 level functions." (Def.'s Mem. at 32 & Ex. 66.) Defendant has provided record evidence that by July 2002, all of the new specialists at NAVSEA's Human Resources Office were GS–201–12 or below. At that point, new position descriptions were signed and distributed to the staff reflecting that the full performance level for each of the positions was GS–201–12. (Def.'s Mem., Ex. 66.) Other than plaintiff's supervisor, a black male, who was a GS–201–13, all of the specialists were informed that their full performance level was GS–201–12. Plaintiff has not provided any evidence in opposition. Because plaintiff cannot show that she was treated differently from similarly situated individuals, she cannot estab-

lish a *prima facie* case of discrimination with respect to this claim. Accordingly, defendant is entitled to summary judgment with respect to this claim.

## VI. UNTIMELY FILING

Because plaintiff has not opposed defendant's motion to dismiss with respect to portions of two of the counts, and defendant is entitled to summary judgment on all remaining counts, defendant's motion to dismiss for failure to file the complaint timely need not be addressed.

### *CONCLUSION*

Because plaintiff has not opposed defendant's motion to dismiss with respect to her retaliation claims in Counts I and II, defendant's motion to dismiss will be granted. Because plaintiff has not established a *prima facie* case of discrimination under Counts I or II, defendant's motion for summary judgment will be granted as to those claims. Because plaintiff has failed to establish a *prima facie* case of discrimination and retaliation as to Counts III, IV, V, and VI, defendant's motion for summary judgment will be granted as to those counts. A separate order accompanies this Memorandum Opinion.