Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 23, 2003      Decided December 16, 2003

No. 02-7138

WILLIE TROY SINGLETARY,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 94cv00419)

---

*Barbara Kraft* argued the cause and filed the briefs for appellant.

*James C. McKay, Jr.*, Senior Assistant Corporation Counsel, argued the cause for appellees. With him on the brief was *Charles L. Reischel*, Deputy Corporation Counsel at the time the brief was filed. *Edward E. Schwab*, Assistant Corporation Counsel, entered an appearance.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: At issue on this appeal are plaintiff Willie Troy Singletary's allegations of employment discrimination and retaliation by the Rehabilitation Services Administration (RSA), a District of Columbia agency, and two of its officials. We conclude that the district court erred in rejecting three of Singletary's claims, and therefore affirm in part, reverse in part, and remand for further proceedings.

I

Plaintiff Singletary, an albino African–American male who is legally blind, was hired by RSA on October 4, 1971. *Singletary v. District of Columbia*, 225 F. Supp. 2d 43, 50–55 (D.D.C. 2002).[1] RSA is an agency within the District of Columbia Department of Human Services (DHS) that provides job training and placement for persons with disabilities. From 1972 to December 1987, Singletary worked as a vocational rehabilitation specialist, a job that required him to place disabled individuals — particularly blind and visually impaired persons — in jobs with local employers. *Id.* at 50.

In March 1986, Singletary applied for a supervisor position in RSA's Visual Impairment Section, a job for which he was rated as highly qualified and that paid a higher salary. After RSA failed to select him for the position, Singletary filed an internal discrimination complaint with DHS. DHS rejected Singletary's complaint on March 5, 1987. Singletary then filed a discrimination complaint with the D.C. Office of Human Rights (OHR); OHR denied Singletary's complaint as well. On October 28, 1987, however, the plaintiff filed an appeal with the Office of the City Administrator that led to a partial victory: Two months later, the City Administrator concluded that DHS had discriminated against Singletary in denying him an opportunity to serve as an acting supervisor,

---

[1] The facts described in this Part are taken primarily from the findings of fact made by the district court.

ordered DHS to "cease and desist from further discriminatory conduct against the Complainant," and remanded Singletary's complaint to OHR for additional investigation regarding his March 1986 non-selection for the supervisor position. *Id*. at 51.

On November 17, 1987, three weeks after Singletary filed his appeal with the City Administrator, defendant Katherine Williams transferred the plaintiff and sixteen other employees to RSA's Vending Facility Program. Unlike the other transferees, who were given regular offices, Singletary was assigned to work in a storage room. The district court described the plaintiff's workspace as follows:

> The storage room was dirty, dusty and without heat, ventilation or adequate lighting. Access to the storage room was through a clinic to which plaintiff did not have keys. As a result, he could not enter the room at will, and he and colleagues visiting him in the room risked being locked in the room. The phone in the room often did not work, and plaintiff's colleagues often could not get hold of him. No other employee used the storage room as an office space before defendants assigned the room to plaintiff. None of the other employees assigned to the Vending Facility Program at that time were placed in workplaces similar to plaintiff's office. . . . RSA had vacant offices available in the same building. . . .

*Id*. at 50–51 (citations omitted). Singletary was not given a regular office until 1990. *Id*. at 51.

Despite his repeated requests, during the six years he worked in the Vending Facility Program "plaintiff had no position description and no official job duties." *Id*. at 54. Without an official job description, "it was possible that in the event of on-the-job injury or death, compensation from the D.C. Government might not be available." *Id*. During the same period, the "plaintiff received no annual reviews except for a 'non-review' in 1992 and a 'satisfactory' in 1993." *Id*. The non-review stated that, "because there is no job description, there is nothing to evaluate this employee on." *Id*. (internal quotation marks omitted).

In October 1989, the position of acting supervisor in the Visual Impairment Section again became available. Singletary applied for, and was again denied, the position. On May 15, 1990, he filed a second discrimination complaint with OHR, alleging that this most recent non-promotion was in retaliation for his 1987 OHR complaint. Nine days later — on a separate appeal from the remand of the 1987 complaint — the City Administrator found there was probable cause to believe that RSA's failure to select Singletary for the supervisor position in 1986 was discriminatory. The Administrator ordered RSA to give Singletary priority consideration for the next available position for which he was qualified. *Id.* at 52.

In January 1991, RSA posted five supervisory vacancies, including one in the Visual Impairment Section. The selection process for these positions took place during April–May 1991. Although he interviewed for all of the positions, Singletary was not chosen for any. *Id.* at 53, 63.

OHR closed Singletary's discrimination case in August 1991. A few weeks later, Singletary appealed the closure to the City Administrator. On March 5, 1993, Singletary's counsel wrote a letter to the City Administrator to inquire about the status of his appeal. The Administrator responded that Singletary did not have grounds for appeal because OHR's closing of the case was not a final decision. Singletary's counsel sent a second letter seeking reconsideration, which the City Administrator denied on April 21, 1993. In the denial letter, the City Administrator erroneously advised that Singletary had a right to appeal to the District of Columbia Court of Appeals. *Id.* at 54. On May 21, 1993, Singletary filed an appeal with that court. Pl.'s Ex. 133.[2]

In June 1993, Singletary applied for another acting supervisor position, this time within RSA's Client Services Division. Again, he was not selected. Then, in August 1993, defendant Ruth Royal Hill transferred Singletary out of the Vending Facility Program and into the Marketing and Placement Unit,

---

[2] Singletary later withdrew that appeal after being advised that the District of Columbia Court of Appeals lacked jurisdiction over his claim. *See* Appellant's Br. at 13.

where he returned to the placement work that he had performed at the beginning of his tenure at RSA. Shortly after returning to the Placement Unit, Singletary requested clerical help, a computer, and computer training as an accommodation for his disability. Singletary's supervisor initially told him that he was asking for too much, and that he would have to wait until the National Rehabilitation Hospital evaluated his job and his need for accommodation. *Singletary*, 225 F. Supp. 2d at 54–55.[3]

On September 17, 1993, Singletary filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging discrimination and retaliation. On March 3, 1994, Singletary filed suit in the United States District Court for the District of Columbia, alleging that the District, DHS, and two RSA officials had discriminated against him on the basis of his skin color and disability, and had retaliated against him for complaining of that discrimination, in violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*; and Section 1 of the Civil Rights Act of 1871, now codified at 42 U.S.C. § 1983. At trial, Singletary's case was based on five theories: "(1) retaliation in violation of Title VII; (2) hostile work environment in violation of Title VII; (3) violation of 42 U.S.C. § 1983; (4) failure to accommodate plaintiff's disability in violation of the ADA and the Rehabilitation Act; and (5) intentional disability discrimination in violation of the ADA and the Rehabilitation Act." *Singletary*, 225 F. Supp. 2d at 55. After a nine-day bench trial, the court entered judgment against Singletary on all of his claims.

With respect to the plaintiff's retaliation claims, the court held that Singletary had proven that three of RSA's employment actions constituted unlawful retaliation in violation of Title VII: the 1987 transfer of Singletary to the Vending Facility Program; the 1987 failure to give Singletary an

---

[3] Singletary ultimately received clerical help in March 1994 and a computer with the proper software in December of that year. *Singletary*, 225 F. Supp. 2d at 55.

official job description; and the 1991 failure to grant Singletary priority consideration and to select him for a supervisory position. *Id.* at 57–60. Nonetheless, the court concluded that Title VII's 300–day statute of limitations for filing an EEOC complaint barred recovery for any of those violations. *Id.* at 61.[4] The plaintiff does not challenge the denial of those three claims on appeal. He does, however, challenge the denial of a fourth Title VII retaliation claim — that the defendants retaliated against him in 1993 by failing to promote him to a supervisory position and transferring him back to the Placement Unit. The district court denied that claim, not because of the statute of limitations, but because it concluded that Singletary had failed to show a causal connection between the defendants' 1993 actions and the protected activity for which the plaintiff claimed those actions constituted retaliation. *Id.* at 57.

The district court also rejected the plaintiff's claim that the defendants intentionally created a hostile work environment in violation of Title VII. That claim was denied on statute of limitations grounds, and is a subject of this appeal. *Id.* at 62. Also rejected on limitations grounds were certain of Singletary's section 1983 claims against the individual defendants in their personal capacities. *Id.* at 63. Singletary has appealed only one of those — his claim that the 1991 failure to promote was unlawfully discriminatory. Finally, the district court denied the balance of Singletary's claims, including additional

---

[4] Where, as here, an aggrieved person "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," Title VII requires such person to file a charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). This requirement is one of "the prerequisites that a plaintiff must satisfy before filing suit." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *see Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1366 & n.2 (D.C. Cir. 1998). Singletary filed his EEOC charge on September 17, 1993. Accordingly, the district court found that only claims based on events that occurred within 300 days of that date were timely. *Singletary*, 225 F. Supp. 2d at 60.

section 1983 claims against both individual defendants and the District of Columbia, and failure-to-accommodate and disability discrimination claims under the ADA and the Rehabilitation Act. *See id.* at 63–66. Singletary does not challenge the denial of the ADA and Rehabilitation Act claims here. *See* Appellant's Br. at 15 n.14.

## II

We review a district court's factual findings following a bench trial, including findings regarding intentional discrimination, for clear error only. *See* FED. R. CIV. P. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). We review the court's legal analysis, however, de novo. While we may not set aside the court's factual findings unless they are clearly erroneous, we owe no such deference to "findings [that] rest on an erroneous view of the law." *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982); *see Barnes v. Small*, 840 F.2d 972, 976 (D.C. Cir. 1988).

In the following sections, we consider Singletary's challenges to the district court's denial of three of his claims: (1) the Title VII retaliation claim regarding the 1993 failure to promote and subsequent transfer; (2) the Title VII hostile work environment claim; and (3) the section 1983 claim regarding the 1991 failure to promote. The remaining determinations from which Singletary appeals are affirmed for the reasons stated by the district court.

## A

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a)(1). Although this provision applies only to private employers, Title VII contains a separate provision that applies to federal agencies and the District of Columbia. *See id.* § 2000e–16(a) ("All personnel actions affecting employees . . . in executive agencies . . . [and] the Government of the District of Colum-

bia . . . shall be made free from any discrimination based on race [or] color. . . ."). " 'Despite the differences in language . . . we have held that Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers, and so we may construe the latter provision in terms of the former.' " *Borgo v. Goldin*, 204 F.3d 251, 255 n.5 (D.C. Cir. 2000) (quoting *Bundy v. Jackson*, 641 F.2d 934, 942 (D.C. Cir. 1981)).

It is also unlawful under Title VII "for an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of unlawful retaliation, the plaintiff must show: " '1) that [he] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.' " *Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)).[5] In this Part, we are concerned with the first and third requirements.

Singletary contends that the district court erred in denying his claim that the defendants unlawfully retaliated against him when they failed to promote him to an acting supervisor position in June 1993 and then transferred him back to the Placement Unit. The court based that finding solely on the conclusion that the "plaintiff has failed to show a causal

---

[5] Where the alleged retaliation took the form of a failure to promote, as it did here, the plaintiff must also show that he applied for an available job and that he was qualified for that position. *See Morgan*, 328 F.3d at 651. Once the plaintiff has established a prima facie case, "the employer must articulate a legitimate non-retaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Cones v. Shalala*, 199 F.3d 512, 520 (D.C. Cir. 2000).

connection with respect to defendants' 1993 conduct." *Singletary*, 225 F. Supp. 2d at 57. And it based that conclusion, in turn, on the fact that "a significant period of time elapsed between" the 1993 employment actions "and the original protected activity in 1987 and 1990." *Id.* The "original protected activity" to which the court referred was Singletary's filing of complaints of discrimination and retaliation with OHR in 1987 and 1990, as well as his immediate pursuit of those complaints before OHR and the City Administrator. *Id.* at 56.

In concluding that there was insufficient temporal proximity between the defendants' alleged retaliatory actions and Singletary's protected activity, the district court failed to take account of protected activity that Singletary undertook long after "the original protected activity in 1987 and 1990" and well into 1993. There was, for example, the letter that Singletary's counsel submitted to the City Administrator on March 4, 1993, asking about the status of his appeal of OHR's dismissal of his discrimination complaint and proposing a meeting to discuss a remedy that would "achieve closure." J.A. 51. There was also the letter his counsel sent to the Administrator on March 9, 1993, requesting "reconsideration of [the] decision not to entertain Mr. Singletary's appeal." J.A. 53–55. That letter provided a detailed account of RSA's failure to comply with the Administrator's May 1990 order that Singletary be given priority consideration for the next available supervisor position and that the discrimination against him cease. And it made plain Singletary's ongoing pursuit of his discrimination claims and continued opposition to RSA's conduct:

> The May 24, 1990 order required that all discrimination against Mr. Singletary cease immediately. Contrary to that order, DHS/RSA has continued to retaliate against Mr. Singletary. The Department has retaliated in a way designed to most effectively humiliate and quiet Mr. Singletary and to rob him of his dignity—that is, by not assigning him a position. . . . DHS' failure to place Mr. Singletary in a real job is insidious retaliation of the

worst sort. . . . It is undisputed that Mr. Singletary continues to be retaliated against. . . . We ask that you reconsider your conclusions . . . and order DHS/RSA to assign Mr. Singletary to a bona fide position consistent with his qualifications [and] otherwise cease retaliating against him.

J.A. 55. Finally, there was Singletary's attempt to litigate his claim by filing an appeal in the D.C. Court of Appeals on May 21, 1993. Pl.'s Ex. 133.

There is no doubt that the 1993 letters from Singletary's attorney constituted protected conduct under Title VII. *See Barnes v. Small*, 840 F.2d 972, 976 (D.C. Cir. 1988); *see also Paquin v. Federal Nat'l Mortgage Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997). So, too, did the appeal that Singletary filed with the D.C. Court of Appeals that same year. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271–73 (2001); *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001). We do not know what conclusion the district court, as factfinder, would have reached regarding causation had it taken this protected 1993 activity into account. Although the court found that there was no other evidence of causation that could make up for the temporal proximity that it thought was absent, *Singletary*, 225 F. Supp. 2d at 57, this circuit has held that a close temporal relationship may alone establish the required causal connection.[6] And here the temporal proximity was quite close: Singletary was denied promotion to the acting supervisor position in June 1993, the month after he filed his appeal with the D.C. Court of Appeals. Whether such proximity was enough in this case is, in the first instance, a question for the

---

[6] *See Cones*, 199 F.3d at 521 ("[G]iven the circumstances of this case, the close temporal proximity of [the plaintiff's] discrimination complaints to the refusal to consider him for the . . . position is sufficient to establish a causal connection."); *Mitchell*, 759 F.2d at 86 ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."); *accord O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1254–55 (10th Cir. 2001).

finder of fact rather than the appellate court. We therefore remand for the district court to determine whether the close temporal relationship between the 1993 protected activity and the 1993 adverse employment action, in the context of other evidence offered by both the plaintiff and the defendants, persuades the court that the defendants unlawfully retaliated against the plaintiff in violation of Title VII.[7]

B

We turn next to Singletary's claim that the defendants intentionally subjected him to a hostile work environment, on account of his skin color and in retaliation for his filing of discrimination complaints, in violation of Title VII. Under Title VII, it is an unlawful employment practice to "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems*, 510 U.S. at 21 (1993). As the Supreme Court has explained: "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)) (citations omitted). Singletary's hostile work environment claim charged that:

> Defendants have subjected plaintiff to demeaning and humiliating working conditions, including an uncomfortable physical environment, no professional work assignments and an absence of professional colleagues, training

---

[7] *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 717 (1983) (remanding a Title VII action because the district court's factual findings in favor of the defendant may have been "influenced by its mistaken view of the law"); *Pullman-Standard*, 456 U.S. at 291 ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.").

and development for almost six years, from December 1987 through August 1993. No other employee is or has been so treated.

Am. Compl. ¶ 27 (J.A. 34).

The district court rejected Singletary's hostile work environment claim on the ground that it was barred by the statute of limitations. The claim was barred, the court said, because Singletary had failed to prove that any discrete "retaliatory act occurred within 300 days of September 17, 1993, the date he filed his EEOC complaint." *Singletary*, 225 F. Supp. 2d at 62; *see supra* note 4. In so holding, the district court rejected the application of what it described as the "continuing violation theory" to a hostile work environment claim. Under that rejected theory, "if the alleged acts constitute one similar pattern or practice and at least one illegal act took place within the filing period, then the complaint of discrimination is not time-barred and acts outside the statutory period may be considered for purposes of liability." 225 F. Supp. 2d at 61; *see id.* at 62. *See generally* 2 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1351–1362 (3d ed. 1996).

The district court's analysis of Title VII's limitations period, as applied to hostile work environment claims, was wrong as a matter of law. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court clarified the appropriate limitations analysis as follows. The Court first set out the rule for "discrete discriminatory acts," such as terminations and failures to promote: They "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. But "[h]ostile environment claims," the Court continued, "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115. Such a claim, the Court said, "is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 116 (internal quotation marks omitted). Accordingly, hostile work environment claims are subject to a different limitations rule and, indeed, to the very rule rejected

by the district court here: "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.... In order for the charge to be timely, the employee need only file a charge within ... 300 days *of any act that is part* of the hostile work environment." *Id.* at 117–18 (emphasis added).[8]

As part of his hostile work environment claim, Singletary plainly did allege acts that took place within 300 days of the filing of his EEOC charge — that is, after November 21, 1992. Those acts included the defendants' intentional and persistent failure to provide him with an official job description, which continued through at least August 1993. *Singletary*, 225 F. Supp. 2d at 54. They also included Singletary's claim that the defendants unlawfully retaliated against him when they failed to promote him to a supervisory position in June 1993 and then transferred him back to the Placement Unit—the claim that we remanded for further consideration in Part II.A. And they further included the plaintiff's claim that, after his 1993 transfer, the defendants refused for over a year to provide him with the clerical assistance, computer, and computer training that he needed to accomplish his assignments. *Id.* at 64.[9]

---

[8] *See also Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). In a footnote, the district court appeared to recognize the applicability of this rule, citing *Morgan* as holding that, although "not appropriate for claims of discrete discriminatory or retaliatory acts," the "continuing violation theory" remains "applicable to charges alleging a hostile work environment." *Singletary*, 225 F. Supp. 2d at 61 n.2. The contrary conclusion in the body of the district court's opinion may be due to the fact that the Supreme Court did not decide *Morgan* until shortly before the district court issued its opinion.

[9] The district court addressed those refusals as part of Singletary's failure-to-accommodate claim under the ADA, and declined to consider them on the ground that Singletary had failed to exhaust

In rejecting the timeliness of Singletary's hostile work environment claim, the district court emphasized its finding that no discrete, unlawful retaliatory act occurred within the statutory period. *Id.* at 62. But whether or not the court reaffirms that finding on remand, *see supra* Part II.A, the timeliness of Singletary's hostile work environment claim does not depend on whether the acts that he alleged were discriminatory are actionable standing alone. As the Court said in *Morgan*, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." 536 U.S. at 115 (citing *Harris*, 510 U.S. at 21). Rather, all Singletary need demonstrate is that "the acts about which [he] complains are part of the same actionable hostile work environment practice." *Id.* at 120.

Recognizing that the district court erred in its application of the limitations bar to Singletary's hostile work environment claim, the defendants ask us to uphold the denial of Singletary's claim on the alternative ground that the district court ruled that Singletary had not been subject to a hostile work environment. But the district court did not so rule. To be sure, the court did state that it had "serious doubts that the defendants' conduct was sufficient to create an abusive working environment." *Id.* at 62 (internal quotation marks omitted). In the very next sentence, however, it concluded that "any doubts this Court holds . . . are moot" in light of its holding that Singletary "failed to timely file a complaint with the EEOC." *Id.*

his administrative remedies. According to the court, the refusals were not charged in and "could not have been expected to grow out of" Singletary's EEOC complaint. *Singletary*, 225 F. Supp. 2d. at 64 (internal quotation marks omitted). But Singletary raised the same allegations as part of his hostile work environment claim. *See* Am. Compl. ¶ 29 (J.A. 34). And in *Morgan*, the Supreme Court held that "an unlawful employment practice has 'occurred,' even if it is still occurring," that "[s]ubsequent events . . . may still be part of the one hostile work environment claim," and that the "entire time period of the hostile environment may be considered by a court for the purposes of determining liability." 536 U.S. at 117, 120.

Nor can we accept the defendants' further suggestion that no reasonable factfinder could find a hostile work environment here. In addition to the alleged 1993 discriminatory failure to promote and 1993–94 failure to provide him with the tools necessary to accomplish his assignments — the merits of which claims the district court must address on remand — Singletary made a host of allegations that the court ruled did have merit but that it erroneously thought were untimely for a hostile work environment claim. Most significantly, the district court determined that, notwithstanding the availability of appropriate office space, the defendants intentionally assigned Singletary to work in an unheated storage room for over a year and a half as "retaliatory discrimination" for the filing of a discrimination complaint. *Id*. at 58. As the court found:

> The room to which plaintiff was assigned was not previously used as an office space, but rather was used as a general storage room. The storage room was without heat or ventilation. It was poorly lit, which posed problems for plaintiff, who is visually challenged. The only entrance to plaintiff's office was through a clinic to which plaintiff did not have keys. The phone in the room often did not work. The office space contained ... brooms [and] boxes of debris.... Defendants clearly intended to relegate plaintiff to this sub-standard office.... [T]he record shows that there were other, more suitable, places in which plaintiff's office could have been located.

*Id*. at 58–59. The court also determined that, as another act of intentional discrimination, the defendants failed for six years to give Singletary an official job description — which left him both unable "to receive performance evaluations, thereby precluding any advancement opportunities," and potentially ineligible to receive unemployment compensation if he were injured on the job. *Id*. at 59. And the court further found that at least two adverse employment actions — the 1987 decision to transfer Singletary to the Vending Facility Program and the 1991 failure to select him for a supervisory

position — were yet additional acts of intentional, unlawful retaliation for the plaintiff's complaints of discrimination.

Although "many of [the] acts upon which [the plaintiff's] claim depends occurred outside the 300 day filing period, we cannot say that they are not part of the same actionable hostile environment claim." *Morgan*, 536 U.S. at 120–21. That is a determination that the district court must make in the first instance. *See id.* at 120 (holding that the court's "task is to determine whether the acts about which [the plaintiff] complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period"). Similarly, we cannot determine whether, if timely, Singletary's allegations demonstrate that his workplace was permeated with a pattern of ongoing harassment that was so "severe or pervasive [as] to alter the conditions of [his] employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotation marks omitted). That, too, is for the district court as factfinder to decide. We therefore remand for a determination of both the timeliness and the merits of Singletary's hostile work environment claim under Title VII.

## C

Finally, we consider the district court's denial of Singletary's charge that the failure of RSA officials to promote him to a supervisory position in 1991, in alleged violation of his constitutional right to equal protection of the laws, rendered them personally liable for damages under 42 U.S.C. § 1983. Section 1983 provides a cause of action for monetary damages and injunctive relief against "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any . . . other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Id.*[10]

---

[10] Singletary's amended complaint included section 1983 claims not only against the individual defendants, but against the District of Columbia as well. A municipality can be held liable under section 1983, however, only when its "policy or custom . . . inflicts the injury." *Monell v. Department of Soc. Services*, 436 U.S. 658,

Although the district court found that RSA's 1991 failure to promote Singletary constituted discriminatory retaliation in violation of Title VII, it nonetheless rejected Singletary's Title VII claim on the ground that it was barred by that statute's 300–day limitations period. *Singletary*, 225 F. Supp. 2d at 59–60; *see supra* note 4. The court did not, however, expressly consider the plaintiff's claim that the 1991 adverse action also constituted a denial of equal protection in violation of section 1983. What the court did say was that "any incidents that occurred before March 3, 1991" were time-barred by the three-year limitations period applicable to suits brought under section 1983 in the District of Columbia. 225 F. Supp. 2d at 63.[11] Apparently, the court thought that the 1991 failure to promote took place in January 1991, and hence fell outside the three year period. *See id.* at 57 ("[P]laintiff has demonstrated that within months of his second complaint to the OHR, defendants failed to provide plaintiff with priority consideration when interviewing him, and ultimately rejecting him, for five supervisory positions in January 1991.").

This factual assumption was clear error. Although the five vacancies were posted in January 1991, *id.* at 53, the decision not to promote Singletary was made in April 1991 at the earliest. *See* Letter from City Administrator to Counsel for Singletary (March 5, 1993) (J.A. 52) (stating that Singletary was considered for a supervisory position on April 26, 1991);

694 (1978). The district court concluded that the plaintiff failed to adduce any evidence that the defendants' actions toward him "were the result of a District of Columbia custom, policy or practice." *Singletary*, 225 F. Supp. 2d at 63–64. Singletary's opening brief does not challenge that conclusion, *see* Appellant's Br. at 27–29 (arguing for personal liability only), and, in any event, we do not perceive clear error in the district court's conclusion.

[11] Singletary filed his complaint in the district court on March 3, 1994. "The Supreme Court has held that . . . claims under section 1983 are governed by" the relevant state's "residual or general personal injury statute of limitations," which in this case is the three-year bar of D.C. Code § 12–301(8). *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (citing *Owens v. Okure*, 488 U.S. 235, 243–50 (1989)).

Pl.'s EEOC Compl. (J.A. 17) (stating that Singletary was interviewed on April 25, 1991 and notified that he was not selected on June 8, 1991); *see also Singletary*, 225 F. Supp. 2d at 63 (noting that the selection process for the positions took place during April and May of 1991). It is thus undisputed that the adverse action taken against Singletary in 1991 fell within the three-year limitations period. Hence, the court's implicit holding that the 1991 claim was untimely was incorrect.

Of course, the fact that Singletary's failure-to-promote claim fell within the limitations period does not end the matter. The district court has yet to consider either the merits of Singletary's claim or the individual defendants' defense of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). We therefore remand for the district court to determine whether Singletary's 1991 non-promotion constitutes a violation of section 1983 for which the individual defendants may be held liable.

### III

For the foregoing reasons, we conclude that the district court erred in: (1) rejecting Singletary's Title VII retaliation claim regarding the 1993 failure to promote on lack-of-causation grounds, without recognizing the close temporal proximity between the alleged retaliatory acts and Singletary's protected activity; (2) holding Singletary's Title VII hostile work environment claim to be time barred, without applying the appropriate limitations analysis; and (3) denying Singletary's section 1983 claim regarding the 1991 failure to promote, on the erroneous assumption that the failure did not take place within the limitations period. Accordingly, we reverse the district court's judgment on those three issues

and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded for further proceedings.*