# Applicability of Anti-Discrimination Statutes to the Presidio Trust

The issue the Presidio Trust has presented is of the sort that Executive Order 12146 calls upon the Attorney General, and hence the Office of Legal Counsel, to resolve.

The Presidio Trust is exempt from section 717 of Title VII of the Civil Rights Act of 1964 and section 15 of the Age Discrimination in Employment Act of 1967 to the extent that these statutes apply to the appointment, compensation, duties, or termination of Trust employees, but not otherwise.

June 22, 2004

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
PRESIDIO TRUST

Congress established the Presidio Trust (the "Trust") in 1996 as a wholly-owned federal government corporation charged with administering historic buildings and property that were formerly part of the Presidio of San Francisco military base.[1] Section 103(c)(7) of the Presidio Trust Act authorizes the Trust

> [n]otwithstanding any other provision of law, . . . to appoint and fix the compensation and duties and terminate the services of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, or other laws related to the appointment, compensation or termination of Federal employees.

16 U.S.C. § 460bb note (2000). The Trust has asked us to determine whether in this provision Congress has exempted it from section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a) ("Title VII"), and section 15 of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a.[2] We first address the argument of the Equal Employment Opportunity Commission ("EEOC") that, pursuant to Executive Order 12146 ("EO 12146"), we should refrain from resolving the question before us. We conclude that the issue presented by the Trust is of the sort that EO 12146 calls upon the Attorney General, and

---

[1] *See* Omnibus Parks and Public Lands Management Act of 1996, Pub. L. No. 104-333, tit. I, § 103(c)(7), 110 Stat. 4093 (codified at 16 U.S.C. § 460bb note) ("Presidio Trust Act").

[2] Our opinion on this matter is informed by letters from both the Trust and the EEOC setting forth their respective views on this issue. *See* Letter for Edward Whelan, Acting Assistant Attorney General, Office of Legal Counsel, from Karen Cook, General Counsel, Presidio Trust (Apr. 25, 2003) ("Presidio Request"); Letter for Noel J. Francisco, Deputy Assistant Attorney General, Office of Legal Counsel, from Karen A. Cook, General Counsel, Presidio Trust (Aug. 8, 2003); Letter for Noel J. Francisco, Deputy Assistant Attorney General, Office of Legal Counsel, from David L. Frank, Legal Counsel, Equal Employment Opportunity Commission (July 25, 2003) ("EEOC Response"); Letter for Noel J. Francisco, Deputy Assistant Attorney General, Office of Legal Counsel, from Peggy R. Mastroianni, Associate Legal Counsel, Equal Employment Opportunity Commission (Oct. 8, 2003).

hence this Office, to resolve. Turning to the merits, we conclude that in enacting section 103(c)(7) of the Trust's organic statute, Congress exempted the Trust from section 717 of Title VII and section 15 of the ADEA to the extent that these statutes apply to the appointment, compensation, duties, or termination of Trust employees, but not otherwise.[3]

## I.

We first address the threshold question whether it is appropriate for us to resolve the question before us under EO 12146, 44 Fed. Reg. 42,657 (1979); 28 U.S.C. § 509 note (2000). The EEOC argues that "a dispute arising out of an adjudicatory process, in which one agency, who is a party to the adjudication, disagrees with the decision of the other agency, who is the adjudicator, is [not] the kind of dispute between agencies that the Executive Order intended the Attorney General to resolve." EEOC Response, *supra* note 2, at 2. We have previously (and recently) rejected this contention. *See Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply With Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24, 25 (Jan. 6, 2003) ("*EEOC Monetary Sanctions*") ("[N]either the fact that EEOC has authority to enforce Title VII in the federal workplace nor the fact that agencies 'shall' comply with EEOC rules and orders, *see* 42 U.S.C. § 2000e-16(b) (2000), divests us of authority to issue this opinion."). We adhere to that position.

We believe that the dispute before us is of the sort that this Office is charged with resolving. As we explained in our *EEOC Monetary Sanctions* opinion, EO 12146 specifically calls upon the Attorney General to review an interagency dispute over whether one agency has jurisdiction to regulate the activities of another. In particular, section 1-401 of the Executive Order provides:

> Whenever two or more Executive agencies are unable to resolve a legal dispute between them, *including the question of which has jurisdiction to administer a particular program or to regulate a particular activity*, each agency is encouraged to submit the dispute to the Attorney General.

---

[3] We have limited our analysis to section 717 of Title VII and section 15 of the ADEA because, insofar as we are aware, these are the only employment discrimination statutes under which the EEOC has asserted jurisdiction over the Trust. *See Newman v. Rosenblatt*, EEOC Appeal No. 01A24736, 2004 WL 602178 (Mar. 18); *Newman v. Rosenblatt*, EEOC Appeal No. 01A24736, 2003 WL 1624696 (Mar. 18). We do not address whether the Trust is subject to other employment laws, which may or may not have features that distinguish them from sections 717 and 15 for purposes of applying the section 103(c)(7) exemption. *See, e.g.*, 29 U.S.C. § 791 (2000) (Rehabilitation Act); 29 U.S.C. § 206(d) (2000) (Equal Pay Act).

44 Fed. Reg. at 42,658 (emphasis added). The Trust's request falls within the plain language of this provision. The Trust specifically raises "the question . . . [whether the EEOC] has jurisdiction to . . . regulate a particular activity"—here, certain employment decisions made by the Trust—an issue with respect to the resolution of which the Trust and the EEOC are in disagreement.[4] As we stated in our *EEOC Monetary Sanctions* opinion, "[a]t its base, the present dispute is whether EEOC has exceeded its own jurisdiction; the dispute is therefore entirely appropriate for resolution by this Office." 27 Op. O.L.C. at 25 (citing EO 12146, § 1-401). And since the Attorney General has delegated to this Office his authority to exercise the functions delegated him under the Executive Order, *see* 28 C.F.R. § 0.25 (2003), we believe that section 1-401 of the Executive Order clearly permits us to resolve this issue.

The EEOC, however, argues that section 1-402 of EO 12146 divests us of authority to resolve this dispute. Section 1-402 provides:

> Whenever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve such a legal dispute, the agencies shall submit the dispute to the Attorney General prior to proceeding in any court, except where there is specific statutory vesting of responsibility for a resolution elsewhere.

44 Fed. Reg. at 42,658. As we understand the EEOC's argument, where "there is specific statutory vesting of responsibility for a resolution" of a legal dispute in an agency other than the Department of Justice, then section 1-402 prohibits the Department of Justice from resolving that dispute even if requested to do so pursuant to section 1-401. And because, the EEOC argues, both it and the courts are vested with responsibility for resolving disputes under the federal employment discrimination laws involving employees of the federal government, *see* 42 U.S.C. § 2000e-16(b), (c) (Title VII); 29 U.S.C. § 633a(b), (c) (ADEA), section 1-402 prohibits the Attorney General from resolving legal issues arising out of these disputes. *See* EEOC Response, *supra* note 2, at 2.

We disagree with the EEOC's interpretation of section 1-402 of the Executive Order. Even assuming *arguendo* that "there is specific statutory vesting of responsibility [in the EEOC and the courts] for a resolution" of the issue raised by the Trust, all that section 1-402 does is establish a requirement that agencies must

---

[4] The EEOC has suggested that there is no interagency dispute within the meaning of section 1-401, reasoning that "[s]ince the Presidio Trust raised the jurisdictional issue in an appeal over which the EEOC has adjudicatory authority, EEOC is not 'unable to resolve' . . . this dispute within the meaning of section 1-401." EEOC Response, *supra* note 2, at 2. As we explain, however, we are not addressing the EEOC's resolution of a specific employment discrimination claim, but rather are resolving an ongoing general statutory dispute between two agencies. And as the submissions to us from the Trust and the EEOC make clear, *see id.* n.2, the Trust and the EEOC have not resolved their dispute on this broader legal issue.

satisfy before they are permitted to bring an action in court. As section 1-402 states, executive agencies "shall submit the [interagency legal] dispute to the Attorney General prior to proceeding in court, except where there is specific statutory vesting of responsibility for a resolution elsewhere." 44 Fed. Reg. at 42,658. In other words, if an agency has already utilized an alternative, statutorily-created mechanism for resolving an interagency legal dispute, the agency may, consistent with section 1-402, "proceed[] in . . . court" without also asking the Attorney General to resolve the dispute. *Id*. This process for resolving interagency disputes helps avoid the constitutionally dubious scenario that arises when the Executive Branch seeks to have a court resolve its internal legal disputes.[5] Nothing in section 1-402, however, prohibits an agency from seeking the Attorney General's opinion on a legal issue, or the Attorney General from rendering such an opinion if asked, even where another entity is likewise vested with responsibility for resolving that dispute.

This understanding of section 1-402 finds support in a previous opinion issued by this Office. *See Application of the Davis-Bacon Act to Urban Development Projects That Receive Partial Federal Funding*, 11 Op. O.L.C. 92 (1987) ("*Davis-Bacon*"). There, we addressed whether section 1-402 modified our authority to resolve a dispute under 28 U.S.C. § 512 (2000), which authorizes "[t]he head of an executive department [to] require the opinion of the Attorney General on questions of law arising in the administration of his department." 11 Op. O.L.C. at 95.[6] The Secretary of Housing and Urban Development had requested our opinion, but the Department of Labor argued that because it was statutorily vested with authority to resolve the legal issue before us, section 1-402 precluded the Attorney General from resolving the issue.

We rejected this argument, explaining that all that section 1-402 did was impose a requirement on the agencies between which the legal dispute had arisen:

> Even assuming, however, that Reorganization Plan No. 14 of 1950—
> directing the Secretary of Labor to prescribe appropriate labor-
> related standards, regulations, and procedures—constitutes "specific

---

[5] We have frequently noted serious constitutional questions presented—both under principles of a unitary executive and Article III justiciability—when the Executive Branch seeks to have a court resolve its internal legal disputes. *See, e.g.*, *Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act*, 21 Op. O.L.C. 109 ( 1997) ("*Clean Air Act*"); *Authority of Department of Housing and Urban Development to Initiate Enforcement Actions Under the Fair Housing Act Against Other Executive Branch Agencies*, 18 Op. O.L.C. 101 (1994); *Proposed Tax Assessment Against the United States Postal Service*, 1 Op. O.L.C. 79 (1977). Indeed, the Solicitor General recently asked the Supreme Court to vacate an Eleventh Circuit decision that held justiciable a dispute between two Executive Branch agencies. *See TVA v. EPA*, 278 F.3d 1184, 1193–98 (11th Cir. 2002), *rev'd on other grounds*, 336 F.3d 1236 (11th Cir. 2003), *cert. denied sub nom. Leavitt v. TVA*, 124 S. Ct. 2096 (2004).

[6] Because we conclude that we may resolve this issue under EO 12146, we need not address whether we may also do so under 28 U.S.C. § 512 or any other authority.

statutory vesting of responsibility for a resolution" of the present dispute within the Secretary of Labor, the reorganization legislation in no sense affects the authority of the head of an executive department to seek, or the Attorney General to render, an opinion under 28 U.S.C. § 512 on questions of law that arise in the administration of his department. Rather, under the above assumption, Reorganization Plan No. 15 of 1950 at most would mean that § 1-402 of Executive Order No. 12146 does not *require* the Secretaries of HUD and Labor to submit this legal dispute to the Attorney General.

*Id*. at 97 (emphasis in original). Section 1-402 did not, however, prohibit an agency from seeking the views of the Attorney General. Nor did it prohibit the Attorney General from providing his views upon request. So too here. Assuming *arguendo* that the EEOC and the courts are statutorily vested with resolving the issue that the Trust has raised, the most that can be said of section 1-402 is that it does not require the EEOC and the Trust to seek resolution of this issue by the Attorney General before proceeding in court. It does not, however, preclude the Attorney General from rendering such an opinion if requested to do so in accordance with section 1-401 of EO 12146.

   We recognize that notwithstanding the foregoing analysis, some dicta in one of our other opinions might be construed to suggest that section 1-402 prohibits this Office from resolving a dispute under section 1-401 if another agency is statutorily vested with responsibility for resolving that dispute. *See* Memorandum for Henry L. Solano, Solicitor, Department of Labor, and Leigh A. Bradley, General Counsel, Department of Veterans Affairs, from Randolph D. Moss, Assistant Attorney General, Office of Legal Counsel, *Re: The Effect of Veterans' Health Administration Nurses' Additional Pay for Sunday and Night Duty on Calculation of Workers' Compensation Benefits* (Jan. 19, 2001) ("*Night Duty*"). There, the Department of Labor argued that it, rather than this Office, was vested with responsibility for resolving a dispute with the Department of Veterans Affairs ("VA") over the proper computation of workers' compensation benefits for certain VA employees. We rejected this argument for two reasons: First, the statutes cited by the Department of Labor did not vest in it responsibility for deciding the dispute before us. *Id*. at 3–7. Second, even if the statutes had vested responsibility for deciding the dispute in the Department of Labor, we had separate authority to resolve it under 28 U.S.C. § 512. *Night Duty* at 7 (citing *Davis-Bacon*, 11 Op. O.L.C. 92). Nevertheless, we observed without analysis that under section 1-402, "we have authority to decide this question unless [the statutes cited by Labor] vest[] responsibility for resolution in DOL." *Id*. at 3 (emphasis added). This dicta could be construed as suggesting that section 1-402 did not just impose a requirement upon agencies between which an interagency legal dispute has arisen, but in addition, that it limited the Attorney General's authority to resolve that dispute even if requested to do so under section 1-401 of the Order. In view of the

foregoing analysis, as well as the absence of any substantive explanation for our apparent suggestion in the *Night Duty* opinion, we hereby disavow the *Night Duty* dicta to the extent that it suggests that the Attorney General's authority to resolve interagency disputes when properly requested to do so pursuant to section 1-401 of the Executive Order is limited by section 1-402.

In any event, the EEOC and the courts are not statutorily vested with resolving the issue raised by the Trust. Sections 717(b) and (c) of Title VII, 42 U.S.C. § 2000e-16(b), (c), upon which the EEOC relies, authorize the EEOC and the courts to resolve specific complaints of employment discrimination alleged by employees of the federal government. The Trust, however, is not asking us to review the EEOC's resolution of any of these specific complaints. Rather, the Trust is asking us to address the broad and generic legal question whether it is subject to the EEOC's jurisdiction pursuant to section 103(c)(7) of its organic statute—a question upon which "there is [not] a specific statutory vesting of responsibility for a resolution" in the EEOC or the courts. 44 Fed. Reg. at 42,658.

Other portions of our *Night Duty* opinion illustrate this distinction. One of the statutes upon which the Department of Labor relied in its argument that this Office lacked authority to resolve its legal dispute with the Department of Veterans Affairs provided that the Secretary of Labor's decision "allowing or denying a payment" is "final and conclusive" and "not subject to review by another official of the United States." 5 U.S.C. § 8128(b) (2000). As we explained:

> It is clear to us that this provision does not apply to this dispute. Section 8128(b) on its face addresses the Secretary of Labor's exclusive jurisdiction to determine specific adjudications of claims for benefits arising under FECA. Because the issue presented to us is a broad statutory dispute between two agencies rather than an administrative adjudication on a specific claim for benefits, it does not present the type of determination intended to be insulated from review under [section] 8128.

*Night Duty* at 4. The same is true here. We are not resolving the EEOC's resolution of "an administrative adjudication on a specific claim" brought by an employee against his federal employer, but rather, "a broad statutory dispute between two agencies." *Id*. The latter is simply not the type of dispute that the EEOC is charged with resolving. *See EEOC Monetary Sanctions*, 27 Op. O.L.C. 24; *Reconsideration of Applicability of the Davis-Bacon Act to the Veterans Administration's Lease of Medical Facilities*, 18 Op. O.L.C. 109, 122–23 (1994) (Department of Labor's authority to administer statute does not supersede Attorney General's authority to resolve legal dispute between agencies); *Clean Air Act*, 21 Op. O.L.C. at 116–17 (rejecting argument that statute precludes resolution of dispute by Attorney General).

We therefore conclude that this Office is fully authorized to resolve the legal dispute that the Trust has presented to us.

## II.

Having determined that we have authority to resolve this dispute, we now turn to whether Congress has exempted the Trust from section 717 of Title VII and section 15 of the ADEA. *See* 42 U.S.C. § 2000e-16; 29 U.S.C. § 633a. In section 103(c)(7) of the Trust's organic statute, as amended, Congress provided:

> Notwithstanding any other provision of law, the Trust is authorized to appoint and fix the compensation and duties and terminate the services of an executive director and such other officers and employ-ees as it deems necessary without regard to the provisions of title 5, United States Code, or *other laws related to the appointment, compensation or termination of Federal employees*.

16 U.S.C. § 460bb note (emphasis added). Both the Trust and the EEOC seem to agree that, but for the language emphasized above, the Trust would be subject to sections 717 and 15. *See* Presidio Request, *supra* note 2, at 14; EEOC Response, *supra* note 2, at 3–4. The precise question before us, however, is whether sections 717 and 15 are "other laws related to the appointment, compensation or termina-tion of Federal employees" within the meaning of the Trust's organic statute. If they are, then in enacting this language, Congress exempted the Trust from these otherwise applicable laws.

As a definitional matter, there can be no doubt that section 717 and section 15 fall within the general category of laws "related to the appointment, compensation or termination of Federal employees." Section 717 requires "[a]ll personnel actions [of the federal government] affecting employees or applicants for em-ployment . . . [to] be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The ADEA similarly requires "[a]ll personnel actions [of the federal government] affecting employees or applicants for employment who are at least 40 years of age . . . [to] be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The "personnel actions" referenced in Title VII and the ADEA plainly include "the appointment, compensation or termination of federal employees."

That these federal employment discrimination laws are "related" to the "ap-pointment, compensation or termination of Federal employees," however, does not necessarily resolve the question before us. "[U]nder the established interpretive canons of *noscitur a sociis* and *ejusdem generis*, '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *Wash. Dep't of Soc. & Human Serv. v. Guardianship*

*Estate of Danny Keffeler*, 537 U.S. 371, 384 (2003) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001)). In *Keffeler*, the Court addressed a provision in the Social Security Act protecting benefits from "execution, levy, attachment, garnishment, or other legal process." *Id*. at 382. The Court rejected the state court's holding that "other legal process" in this context covers a state agency's use of benefits to reimburse itself as representative payee. While recognizing that "in the abstract the department does use legal process as the avenue to reimbursement," the Court interpreted that phrase more restrictively in its context to include only those processes similar to the judicial processes of execution, levy, attachment and garnishment. *Id*. at 384. *See also Circuit City*, 532 U.S. at 112 (Federal Arbitration Act exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" covers only transportation workers, not all contracts under Congress's commerce power). Here, the relevant phrase—"other laws related to the appointment, compensation or termination of Federal employees"—is preceded by the phrase "the provisions of title 5, United States Code." Under the *noscitur a sociis* and *ejusdem generis* canons, therefore, it might well be argued that only those laws "similar in nature" to the provisions in title 5 are within the general "other laws" referenced in section 103(c)(7).

Even under these interpretive principles, however, we think it clear that section 717 and section 15 are "other laws" within the meaning of section 103(c)(7). In particular, two features common between "the provisions of title 5, United States Code," on the one hand, and section 717 and section 15, on the other, lead us to the conclusion that they are generally similar to one another for purposes of applying the *noscitur a sociis* and *ejusdem generis* canons.

Perhaps most significantly, the salient feature of title 5 is that it sets forth laws that apply exclusively to federal employment. Title 5 as a whole is entitled "Government Organization and Employees." Its provisions establish the basic structure of the federal government. Part III of title 5, moreover, deals exclusively with federal employment. Title 5, in other words, contains "laws related to the appointment, compensation or termination of Federal employees." 16 U.S.C. § 460bb note (emphasis added). The "other laws" referenced in section 103(c)(7), therefore, surely include laws that, like title 5, relate exclusively to federal employment. Like title 5, however, the provisions of section 717 of Title VII and section 15 of the ADEA relate exclusively to "Federal employees." *Id*.

Section 717 is illustrative. Title VII's general antidiscrimination provision applies only to "employers," *see* 42 U.S.C. § 2000e-2 (2000) (prohibiting an "employer" from unlawful discrimination on the basis of race, color, religion, sex or national origin), a term that expressly excludes the federal government, *see* 42 U.S.C. § 2000e(b) (defining "employer" to exclude "the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service"). In contrast, section 717 applies only to the federal

government. In particular, section 717(a), added to the statute in 1972 (before which the federal government was entirely exempt from Title VII's antidiscrimination requirements), provides:

> All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, . . . and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a) (2000). As this provision makes clear, section 717 is not a general employment discrimination law that happens also to apply to the federal government. Rather, it is a law that, like title 5, applies specifically to federal employment. It is, in other words, an "other law[] related to the appointment, compensation or termination of Federal employees." 16 U.S.C. § 460bb note.

The same is true of section 15 of the ADEA, which in relevant respects is identical to section 717 of Title VII. As in Title VII, the ADEA's general antidiscrimination provision applies to "employers," *see* 29 U.S.C. § 623(a) (2000) (prohibiting an "employer" from unlawful discrimination on the basis of age), a term that expressly excludes the federal government, *see* 29 U.S.C. § 633(b) (defining "employer" to exclude "the United States, or a corporation wholly owned by the Government of the United States"). And as with section 717 of Title VII, section 15, added to the ADEA in 1974 (before which the federal government was entirely exempt from the ADEA), applies only to the federal government:

> All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in military departments . . . , in executive agencies . . . , in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the General Accounting Office, and the Library of Congress shall be made free from any discrimination based on age.

29 U.S.C. § 633a(a). This section also incorporates the remedial and procedural provisions contained in section 717 of Title VII. *Id.* § 633a(a), (b).

The most salient feature of title 5, in other words, is replicated in section 717 of Title VII and section 15 of the ADEA: All three are "laws related to the appointment, compensation or termination of Federal employees." 16 U.S.C. § 460bb note. Indeed, all three apply exclusively to federal employment. In this light, it is difficult to distinguish these statutes in any meaningful way.

Section 717 and section 15 are also similar to title 5 in a second important respect: All three seek to prohibit *employment discrimination* in the federal government. As discussed above, sections 717 and 15 provide that "personnel actions affecting employees or applicants for [federal] employment" "shall be made free from any discrimination based on race, color, religion, sex, or national origin" and "free from any discrimination based on age," respectively. 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a(a). Likewise, chapter 72, subchapter I of title 5, entitled "Antidiscrimination in Employment," provides, among other things, that "[i]t is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin," further stating that "[t]he President shall use his existing authority to carry out this policy." 5 U.S.C. § 7201(b) (2000). It has similar provisions related to discrimination on the basis of marital status, *see* 5 U.S.C. § 7202 (2000),[7] and disability, *see* 5 U.S.C. § 7203 (2000).[8] *See also* 5 U.S.C. § 7204(b) (2000) ("In the administration of chapter 51, subchapters III and IV of chapter 53, and sections 305 and 3324 of this title, discrimination[] because of race, color, creed, sex, or marital status is prohibited with respect to an individual or a position held by an individual."). Section 717, section 15, and title 5, in other words, all seek to prohibit employment discrimination by the federal government.

In short, it is difficult to distinguish section 717 of Title VII and section 15 of the ADEA from title 5 on any principled basis. All three regulate employment in the federal government and, more specifically, all three prohibit the federal government from engaging in specified categories of employment discrimination.

---

[7] Section 7202 provides: "(a) The President may prescribe rules which shall prohibit, as nearly as conditions of good administration warrant, discrimination because of marital status in an Executive agency or in the competitive service. (b) Regulations prescribed under any provision of this title, or under any other provision of law, granting benefits to employees, shall provide the same benefits for a married female employee and her spouse and children as are provided for a married male employee and his spouse and children. (c) Notwithstanding any other provision of law, any provision of law providing a benefit to a male Federal employee or to his spouse or family shall be deemed to provide the same benefit to a female Federal employee or to her spouse or family."

[8] Section 7203 provides: "The President may prescribe rules which shall prohibit, as nearly as conditions of good administration warrant, discrimination because of handicapping condition in an Executive agency or in the competitive service with respect to a position the duties of which, in the opinion of the Office of Personnel Management, can be performed efficiently by an individual with a handicapping condition, except that the employment may not endanger the health or safety of the individual or others."

Nor does anything in either the statutory or legislative history suggest that section 103(c)(7)'s reference to "other laws" is not intended to encompass section 717 of Title VII and section 15 of the ADEA. In its original form, section 103(c)(7) of the Presidio Trust Act authorized the Trust to appoint and fix the compensation and duties of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, governing appointments in the competitive service, and [to] pay them without regard to the provisions of chapter 51, and subchapter III of chapter 53, title 5, United States Code, relating to classification and General Schedule pay rates. 110 Stat. at 4100. In 1997, however, Congress broadened the section 103(c)(7) exemption. *See* Department of the Interior and Related Agencies Appropriations Act, 1998, § 351, Pub. L. No. 105-83, 111 Stat. 1543, 1607 (1997). As amended, section 103(c)(7) now authorizes the Trust

> [n]otwithstanding any other provision of law, . . . to appoint and fix the compensation and duties and terminate the services of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, or other laws related to the appointment, compensation or termination of Federal employees.

16 U.S.C. § 460bb note. This amendment was adopted without debate by unanimous consent. *See* 143 Cong. Rec. 19,444–48 (1997). And as both the Trust and the EEOC seem to agree, nothing in the legislative history gives any indication, one way or the other, as to what Congress intended to accomplish by this amendment. *See* Presidio Request, *supra* note 2, at 8 (acknowledging that "there is little legislative history regarding the amendment"); EEOC Response, *supra* note 2, at 4 (acknowledging that "[u]nfortunately, there is no legislative history to support or contradict either EEOC's or the Trust's interpretations"). We are thus left with the language of the amendment itself, which, we have explained, on its face encompasses sections 717 and 15.[9]

Although we believe that the foregoing discussion amply establishes that in enacting section 103(c)(7) Congress exempted the Trust from application of sections 717 and 15 to the extent that these statutes apply to the appointment,

---

[9] The EEOC has suggested that an interpretation of "other laws" that includes section 717 of Title VII and section 15 of the ADEA would be so broad that it "would mean that the Trust would not have to make Social Security payments on its employees' behalf, and would not have to withhold federal income taxes from their paychecks." *See* E-mail for Leslie A. Simon, Office of Legal Counsel, from Thomas Schlageter, EEOC, *Re: Presidio Trust* (Mar. 1, 2004) ("EEOC E-mail"). The section 103(c)(7) exemption, however, only encompasses laws "related to the appointment, compensation or termination of Federal employees," and then only permits the Trust to "appoint and fix the compensation and duties and terminate the services" of Trust employees without regard to such laws. 16 U.S.C. § 460bb note. It is difficult to understand how Social Security payments and withholding taxes would fall within these categories.

compensation, duties or termination of Trust employees, two other considerations provide further confirmation of our conclusion. First, section 104(b) of the Presidio Trust Act exempts the Trust from "[f]ederal laws and regulations governing procurement by Federal agencies . . . with the exception of laws and regulations related to Federal government contracts governing working conditions and wage rates . . . and any civil rights provisions otherwise applicable thereto." 16 U.S.C. § 460bb note. Congress easily could have carved employment discrimination laws out of its section 103(c)(7) exemption, just as it did with respect to civil rights provisions in section 104(b). That it did not do so suggests that the term "other laws" in section 103(c)(7) encompasses the federal employment discrimination laws as we have discussed.

Second, we are guided by the requirement that we "'give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citation omitted). *See also Pa. Pub. Welfare Dep't v. Davenport*, 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision as to render superfluous other provisions of the same enactment.") (citation omitted). Were we to conclude that the "other laws" in section 103(c)(7) of the Trust Act did not include these federal employment discrimination laws insofar as they regulate the appointment, compensation, duties or termination of federal employees, it is unclear to us what the "other laws" referenced in section 103(c)(7) would include. Although we have identified a few provisions scattered throughout the U.S. Code relating to veterans' employment rights, *see, e.g.*, 38 U.S.C. §§ 4214, 4314, 4324 (2000), and a criminal prohibition against a federal employee's receiving salary supplementation from an outside source, *see* 18 U.S.C. § 209 (2000), these bear no more relationship to title 5 than do the federal employment discrimination laws discussed above.[10]

We hasten to note, however, that section 103(c)(7) does not exempt the Trust from *all* applications of sections 717 and 15. Section 103(c)(7)'s exemption allows

---

[10] The EEOC points to two other possible examples of "other laws related to the appointment, compensation or termination of Federal employees": 5 C.F.R. § 530.203(a) (2004) and 2 U.S.C. § 356 (2000). *See Newman v. Rosenblatt*, 2004 WL 602178, at *2; EEOC E-mail, *supra* note 9. The Trust is exempt from these provisions, however, not by virtue of the "other laws" language, but rather by virtue of its exemption from title 5 itself. *See* 16 U.S.C. § 460bb note ("without regard to the provisions of title 5, United States Code"). For example, 5 C.F.R. § 530.203(a) sets forth circumstances in which "[n]o executive branch employee . . . may receive any allowance, differential, bonus, award, or other similar cash payment *under title 5, United States Code*" (emphasis added). This regulation, moreover, specifically implements section 5307 of title 5, which is substantively identical to the regulation. *See* 5 U.S.C. § 5307 (2000). The Trust, however, is explicitly exempt from title 5 and, as a result, is explicitly exempt from this title 5 restriction on its ability to pay its employees. The same is true of 2 U.S.C. § 356, which authorizes the Citizens' Commission on Public Service and Compensation to "conduct . . . a review of the rates of pay of . . . offices and positions under the Executive Schedule in subchapter II of chapter 53 *of Title 5*" (emphasis added). It is unclear to us whether this Commission has authority other than to conduct a "review," and therefore how it would affect the Trust's ability to compensate its employees. But in any event, as with 5 C.F.R. § 530.203(a), this provision only applies to the extent that title 5 itself applies, from which, as we have explained, the Trust is explicitly exempt.

the Trust to "appoint and fix the compensation and duties and terminate the services" of its employees "without regard to the provisions of title 5, United States Code, or other laws related to the appointment, compensation or termination of Federal employees." 16 U.S.C. § 460bb note. Many applications of the federal employment discrimination laws, however, do not regulate the appointment, compensation, duties or termination of federal employees. Title VII, for example, has been held to prohibit racially and sexually hostile work environments, *see Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003); *see also Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986), and racial and sexual harassment, *see, e.g.*, *Bundy v. Jackson*, 641 F.2d 934, 943–44 (D.C. Cir. 1981). To the extent that these statutes cover employment actions other than the appointment, compensation, duties or termination of Trust employees, they remain applicable to the Trust notwithstanding section 103(c)(7).[11]

In sum, we conclude that in enacting section 103(c)(7) of the Trust's organic statute, Congress exempted the Trust from section 717 of Title VII and section 15 of the ADEA to the extent that these statutes apply to the appointment, compensation, duties or termination of Trust employees, but not otherwise.

NOEL J. FRANCISCO
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[11] We note that we do not here address the application to the Trust of Executive Orders prohibiting discrimination in federal employment, *see, e.g.*, Exec. Order No. 11478, §§ 1, 2, 34 Fed. Reg. 12,985 (1969); Exec. Order No. 11141, 29 Fed. Reg. 2477 (1964) (age), or whether a Trust employee could bring an employment discrimination suit against the Trust under the equal protection component of the Due Process Clause, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228, 247 (1979); *Brown v. GSA*, 425 U.S. 820 (1976).